**CITY OF LOS ANGELES,**
**et al., Petitioners,**

v.

**UNITED STATES DEPARTMENT OF TRANSPORTATION, et. al., Respondents.**

**Airports Council International—North America, et al., Intervenors.**

**No. 98–1071.**

United States Court of Appeals, District of Columbia Circuit.

June 18, 1999.

Before: EDWARDS, Chief Judge, WALD, SILBERMAN, WILLIAMS, GINSBURG, SENTELLE, HENDERSON, RANDOLPH, ROGERS, TATEL, and GARLAND, Circuit Judges.

---

PER CURIAM:

## ORDER

The petitions for rehearing *en banc* of the City of Los Angeles, et al. and of the Airports Council International—North America and the response thereto have been circulated to the full court. The taking of a vote was requested. Thereafter, a majority of the judges of the court in regular active service did not vote in favor of either petition. Upon consideration of the foregoing, it is

**ORDERED** that the petitions be denied.

Separate statement filed by Circuit Judge SILBERMAN, concurring in the denial of rehearing en banc.

Separate statement filed by Circuit Judge WILLIAMS, with whom Circuit Judge GINSBURG joins, dissenting from the denial of rehearing en banc.

Chief Judge EDWARDS and Circuit Judges WALD and TATEL did not participate in this matter.

SILBERMAN, Circuit Judge, concurring in the denial of rehearing en banc:

The dissent seems to quarrel fundamentally with the sentence in the panel opinion that states, "In reviewing the Department's order, we do not sit as a panel of referees on a professional economics journal, but as a panel of generalist judges obliged to defer to a reasonable judgment by an agency acting pursuant to congressionally delegated authority." *City of Los Angeles v. DOT*, 165 F.3d 972, 977 (1999). It is apparently the dissent's view that we are authorized to review *de novo* the DOT's application of the concept of opportunity cost (as if economics were incorporated into, or somehow on an independent par with the Constitution). *Cf. Lochner v. New York*, 198 U.S. 45, 75, 25 S.Ct. 539, 49 L.Ed. 937 (1905) (Holmes, J., dissenting) ("The Fourteenth Amendment does not enact Mr. Herbert Spencer's Social Stat-

ics."). And if we think the Department insufficiently appreciated the virtue of opportunity cost pricing as a signaling device generating a more optimal allocation of society's resources, we are justified in rejecting the Department's decision as "erroneous." By contrast, the panel, although recognizing that economists (or we) might disagree with the Department's rejection of opportunity cost pricing in this case, did not think that warranted us, as a reviewing court under a deferential standard of review, to object to the Department's decision. *City of Los Angeles*, 165 F.3d at 977.

Even assuming the issue should be thought as purely an economic one—which of course it is not (the issue might properly be described as whether LAX, having taken taxpayer money under the condition that it would continue to use LAX as an airport is legally entitled to charge a significant group of those taxpayers, airline passengers flying in and out of LAX, its opportunity cost based on a nonexistent opportunity)—petitioners did not produce testimony (or writings) of any economist to the effect that the market price of the airfield land should be considered as its opportunity cost under these circumstances.[1] Professor Arrow, who testified in the original proceeding as to the general appropriateness of opportunity cost pricing, *see Los Angeles Int'l Airport Rates Proceeding and Second Los Angeles Int'l Airport Rate Proceeding (Remand Decision)*, Order 97–12–31, at 11–12 (Dec. 23, 1997), never appeared in this remand proceeding, and, therefore, neither he nor any "non-resident" economist has expressed a view on the matter. Indeed, we ourselves had recognized that the scenario was more complicated than the typical opportunity cost setting in a prior opinion—which Judge Ginsburg joined (presumably pre-Econ 101)—concerning DOT's rulemaking proceeding for airport fees. *See Air Transp. Ass'n of Am. v. DOT*, 119 F.3d 38, 44 (D.C.Cir.1997) ("[S]ince airports are

---

1. The dissenters' wish to assume away LAX's legal obligation reminds me of the old joke:

How does an economist escape from a 25 foot hole? Answer: Assume a ladder.

obliged to use their property as an airport, the concept of opportunity cost, and therefore fair market value, does not quite fit.").

DOT alternatively assumed that if the grant condition were disregarded for purposes of opportunity cost analysis, the City—rather than just the airport—should be viewed as the relevant economic actor. The Department noted the enormous economic impact of LAX on the City: state and local tax revenues flowing from LAX were estimated at $1.7 billion in a 1992 study. Pursuing another opportunity on the LAX land would require forgoing this revenue or else building a new airport or expanding an existing minor airport like Burbank. Either option would be tremendously costly, and this cost should, in the DOT's view, be subtracted, in calculating the City's opportunity cost, from the profits to be earned in pursuing alternate uses of the LAX land. Perhaps an economist would treat the *airport* alone as the relevant economic actor. But again the City did not produce any economist's testimony in support of that proposition, so DOT's perspective was certainly reasonable. Judged from that viewpoint, the dissent's suggestion that if Los Angeles sold all of its LAX airport land to a real estate developer, airlines could simply fly into Burbank airport is about as realistic as Marie Antoinette's apocryphal advice to the hungry poor of Paris, "Let them eat cake."

\* \* \* \*

Had this case turned on the quality of briefs and oral advocacy (as cases sometimes do), petitioners would have won hands down. The Department of Transportation was represented, not by the excellent appellate lawyers from the Civil Division of the Justice Department, but by the General Counsel's office of DOT. Lawyers from the Antitrust Division of the Justice Department appear on the brief as of counsel. Insofar as that suggests Justice Department lawyers actually read and contributed to the briefs, I think the FTC should investigate for truth-in-labeling.

WILLIAMS, Circuit Judge, with whom Circuit Judge GINSBURG joins, dissenting from the denial of rehearing en banc.

The Department of Transportation ("DoT") regulates landing fees charged at Los Angeles International Airport ("LAX"). Here the panel decision upholds as reasonable DoT's insistence that the charge for the airport's land be calculated on the basis of historical accounting cost. 165 F.3d 972 (D.C.Cir.1999). Though there may be a good reason for the Department's conclusion, the two offered by the Department and approved by the panel appear erroneous.

As our earlier opinion made clear, the agency cannot reject opportunity cost—or any other reasoned proposal offered by a party—without some reason. See 103 F.3d 1027, 1031–34 (D.C.Cir.1997) (rejecting DoT's previous rejection of opportunity cost). The proposed use of opportunity cost is reasoned: it has the effect of giving the customers the correct signal as to the cost imposed on society by their use of the resource. See *id.* at 1034 (citing City's contention that opportunity cost pricing would "ensure that the actual costs of the airfield are borne by those receiving the benefit"). In this case, giving that signal would be valuable because it would cause airlines to use correct figures in comparing LAX with alternatives available to them (e.g., Burbank). As the City argued here, pricing at less than opportunity cost can be expected to bring about excessive use of the airport. See Final Decision on Remand at 20.

The current panel opinion first embraces DoT's argument that the City obliged itself, in exchange for the statutory subsidy, not to divert the property from its use as an airport. Ergo, say DoT and the panel, there is no opportunity cost. This seems to rest on the idea that if some exogenous circumstance blocks application of a resource to other uses, it follows that use of opportunity cost is inappropriate. That is surely a non sequitur; the signalling referred to above is just as valuable as it

would have been without the block. By contrast, of course, an inherent deficiency in the land (not alleged here) would properly cut down opportunity cost.

Suppose a person owns property in fee simple determinable, to hold "so long as the land is used as an airport." There plainly would be neither legal compulsion for him to price the airport's services at historic cost, nor would charges based on opportunity cost in any way logically contradict the terms of ownership. Thus the conclusion that use of historical cost was "a consequence of an unambiguously imposed condition," 165 F.3d at 978, appears to me a non sequitur.

The panel also accepts DoT's alternative idea that the economic benefits generated for the City by the airport "cover[ ]" the opportunity costs of the land. *Id.* at 976, 978–79. Of course the airport generates spillover benefits for the City.[1] But the panel never explains, and I cannot understand, why the existence of those benefits undercuts the reasons for using opportunity cost. They in no way reduce the utility of sending users accurate price signals.

Perhaps the point of this second theory is that re-allocation of LAX to any other use would drive the City into depression, so that the apparent opportunity is a phantom. But that would be so only if we assumed that the airport would not be replaced, an absurd assumption. Further, even if the costs of replacing the airport would be higher than the opportunity cost of LAX, and so high that on net replacement elsewhere would be unwise, that would not logically undermine the proposition that the opportunity cost of *this land* is what its best alternative use would be. Even the foolish building of an extravagantly priced substitute airport would in fact release this land for alternative uses.

Therefore, its value in those uses is its opportunity cost.

In reliance on these two theories, DoT concluded that "LAX incurs no opportunity cost." Final Decision on Remand at 16. Because of that belief, it refrained from resolving other possible theories supporting its rejection of opportunity cost. See *id.* (It mentioned the historic practice of airports to base charges on historic cost, see *id.* at 22–26, and various complications in computing opportunity cost, see *id.* at 26–29, but the decision does not suggest that these issues were decisive, and they played no role in the panel's affirmance.) As DoT has evidently rejected opportunity cost with no logically sound basis for doing so, another remand to DoT seems to me in order.

\* \* \*

The engaging charm of Judge Silberman's rhetoric, ante, somewhat obscures his resolute refusal to engage the City's claim. That claim is simply that opportunity cost pricing tends to generate a more optimal allocation of business between suppliers of a good or service: here the service of enabling planes to land and take off, to receive and deliver passengers and freight, in the LA metropolitan area. The Department does not contest this proposition. It therefore does not require economists, resident or non-resident, Nobel laureates or fugitives from Econ 101, to assess its general truth. That is a given. Rather, the Department claims that the precept is inapplicable where (1) the owner of one source of supply has contractually obligated himself to use his assets for the specified purpose, or (2) the owner of the resource benefits in some collateral way from the business involved. As shown above, both those claims are simply non sequiturs.[2]

---

1. It also generates spillover costs, such as noise pollution. And, as Intervenor Airports Council International—North America points out, many of the spillover benefits run to the airlines, for which the City creates a market; as the Intervenor observes, "Passengers do not choose air travel because they like the cuisine."

2. Notwithstanding the Concurring Statement at 938–39, they are not made any the less non sequiturs because a prior panel cited DoT's *contention* that LA's promise rendered the concept of opportunity cost inapplicable, a contention that the panel specifically cast doubt upon. See 119 F.3d 38, 44 (D.C.Cir. 1997).

As for the fantasy of LAX being closed and entirely replaced by Burbank, that is a fantasy entirely of Judge Silberman's rich imagination—as any glance at the above text will show. It is not implicated by the simple thought that correct pricing of LAX's services would generate a better allocation of trade as between LAX, Burbank and any other (existing or as yet undeveloped) suppliers of the same service.